UNITED STATES COURT OF A PPEALS
FOR THE THIRD CIRCUIT

RECEIVED
MAR - 1 2024
U.S.C.A. 3rd. CIR

KENNETH CHERRY,                                :
                                               :
<u>PRO</u> <u>SE</u> Petitioner,                 :   Case No.
                                               :
v.                                             :   From the United States District Court
                                               :   for the Third Circuit Case No. 19-CR-122-1
UNITED STATES OF AMERICA,                      :
                                               :
Respondent.                                    :

## REQUEST FOR A CERTIFICATE OF APPEALABILTY

I

Petitioner Kenneth Eugene Cherry, Jr.,  <u>pro se</u>, comes before this Honorable Court seeking a COA from the United States District Court's misconstruing Petitioner's constitutional claims and cited controlling law. The District Court ignored Petitioner's constitutional claims, and made up its own reasons outside the facts and constitutional claims presented, for denying those claims.  The District Court did not consider, and did not  apply the facts and Constitutional law  presented by Petitioner in his 28 U.S.C. §2255 motion, and also presented in his  answer  to the District Court's order dated June 7, 2023.

Petitioner Kenneth Cherry, a pro se federal prisoner,  respectfully requesting  the court to consider the fact that he  is a <u>Pro Se</u> litigant, so he requests this Honorable Court  to be lenient in its consideration of his motion,  and to construe his arguments in their best light. <u>See</u> <u>Price v. Johnson,</u> 334 U.S. 266, 292 (1948).

II

### REASONS FOR GRANTING A CERTIFICATE OF APPEALABILITY

A certificate of appealability is warranted because the issues for appeal are debatable

among jurists of reason and deserve encouragement to proceed further. Thus, Petitioner has made a "substantial showing of the denial of a constitutional right."

### A. The standard for granting a certificate of appealability is not demanding.

A federal prisoner may not appeal the denial of a § 2255 motion unless the District Court, the Court of Appeals, or a Circuit Justice "issues a certificate of appealability." 28 U.S.C. § 2253(c)(1); see also Gonzalez v. Thaler, 565 U.S. 134, 143 n.5 (2012). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a COA "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). This standard is not onerous. A petitioner need only demonstrate "that reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). AEDPA does not "require petitioner[s] to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003). Rather, "[a]t the COA stage, the only question is whether" the "claim is reasonably debatable." Buck v. Davis, 137 S. Ct. 759, 773, 774 (2017). And a claim "can be debatable even though every jurist of reason might agree, after the COA has been granted and the case received full consideration, that the petitioner will not prevail." Miller-El, 537 U.S. at 338. A court need not be convinced of the ultimate merits before granting a COA. Miller-El, 537 U.S. at 327 ("[W]e decide again that when a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition, the court of appeals should limit its examination to a threshold inquiry into the underlying merit of his claims."). A claim may be debatable, and thus deserving of a COA, "even though every jurist of reason might agree, after the certificate of appealability has been granted and the case received full consideration, that petitioner will not prevail." Miller-El, 537 U.S. at 338.

The Supreme Court has also explained that "[t]his threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El v. Cockrell, 123 S.Ct.

1029, 1039 (2003). "A COA does not require a showing that the appeal will succeed. Accordingly, a court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief. The holding in Slack would mean very little if appellate review were denied because the prisoner did not convince a judge, or, for that matter, three judges, that he or she would prevail. It is consistent with 253 that a COA will issue in some instances where there is no certainty of ultimate relief... We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Miller- El ,   537 U.S. at pages 337-338 (2003).

the petitioner need not show that he should prevail on the merits. Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000) (en banc) ["... [O]bviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor"]. Rather,  the petitioner is merely required to make the "modest" showing (Lambright, supra, at 1025) that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). As explained by the Ninth Circuit in Jennings v. Wood-ford, 290 F.3d 1006 (9th Cir. 2002), the substantial showing standard required for a COA is "relatively low." Id., at 1011, citing Slack, supra. Hence, a COA must issue if any of the following apply: (1) the issues are debatable among reasonable jurists; (2) another court could resolve the issues differently; or (3) the questions raised are adequate enough to encourage the petitioner to proceed further. Finally, "The court must resolve doubts about the propriety of a COA in the petitioner's favor." Jennings, supra, citing Lambright, supra, at 1025."

**B. Reasonable jurists could debate whether the District Court improperly relied on its own reasoning instead of applying the facts and Constitutional law, in denying Petitioner's § 2255 motion claims.**

Before the Court is Petitioner's application for a certificate of appealability (COA). The District Court misapplied the facts, and the Constitutional law, and Supreme Court precedents, in denying

3

Petitioner's § 2255 Constitutional claims, when reasonable jurists  could debate the following

Constitutional claims; Petitioner seeks a COA on his claims:

1. PETITIONER'S "INDIVIDUAL RIGHT" TO KEEP AND BEAR ARMS <u>HAS NEVER BEEN</u> <u>ABROGATED</u> WITHIN THE PROTECTIONS GUARANTEED HIM BY THE CONSTITUTION OF THE UNITED STATES

2. THE GOVERNMENT IS CONSTITUTIONALLY BARRED FROM SUMMARILY ABROGATING PETITIONER'S <u>SECURED RIGHT</u> TO KEEP AND BEAR LEGAL FIREARMS FOR LAWFUL HOME AND FAMILY AND SELF-DEFENS

3. THE GOVERNMENT CANNOT CAPRICIOUSLY DEPRIVE, OR TAKE AWAY PETITIONER'S <u>SECURED</u> <u>RIGHT</u>, TO KEEP AND BEAR ARMS, OR HIS RIGHT, TO DUE PROCESS OF LAW

4. THE <u>SECURED</u> "RIGHT" TO KEEP AND BEAR ARMS EXPRESSED BY THE SECOND AMENDMENT, AND THE <u>SECURED</u> "RIGHT" TO DUE PROCESS OF LAW EXPRESSED BY THE FITH AMENDMENT, <u>INCLUDES FELONS HERE, PETITIONER</u>

5. A FELONY CONVICTION <u>DOES NOT</u> ABROGATE THE INDIVIDUAL RIGHT TO KEEP AND BEAR ARMS SECURED BY THE CONSTITUTION OF THE UNITED STATES; THE SECURED "INDIVIDUAL RIGHT" TO KEEP AND BEAR ARMS  <u>DOS NOT</u> EVAPORATE, AND IS NOT FORFEITED, UPON A FELONY CONVICTION

6. THE GOVERNMENT'S LAW PROHIBITING INTRASTATE POSSESSION OF LEGAL FIREARMS BY CERTAIN CITIZENS RUNS AFOUL OF THE SECOND AND FIFTH AMENDMENTS

7. THE FEDERAL GOVERNMENT'S FIREARM LAWS AGAINST FELONS, ONE BEING § 922(g)(1), WERE ENACTED UNDER THE <u>FALSE  ASSUMPTION</u> THAT AMERICAN CITIZENS <u>DID NOT</u> HAVE AN "INDIVIDUAL RIGHT," TO KEEP AND BEAR ARMS, THUS ARE LEGALLY INVALID UNDER THE NEW LAWS FINDING THAT AMERICAN CITIZENS, DO HAVE A CONSTITUTIONAL "INDIVIDUAL" RIGHT TO KEEP AND BEAR ARMS

8. THE GOVERNMENT'S PROSECUTION OF PETITIONER UNDER 18 U.S.C. § 922(G)(1) CLASHES WITH THE PROHIBITIONS OF THE SECOND AND FIFTH AMENDMENTS

9. THE GOVERNMENT MAY NOT CONSTITUTIONALLY APPLY ITS LAW 18 U.S.C. § 922(g)(1) AGAINST  PETITIONER AN AMERICAN CITIZEN, WHEN HE <u>HAD NOT</u> HAD HIS INDIVIDUAL RIGHT TO KEEP AND BEAR ARMS, ABROGATED WITHIN THE PROTECTION OF THE CONSTITUTION OF THE UNITED STATES

10. THE CONVICTIONS ON THE  13 COUNTS OF VIOLATING 18 U.S.C. § 922 (g)(1) MUST BE VACATED

11. The Government's convictions and sentences under §§ 922(k) and 924(a)(1)(B) possession  of a firearm with serial number removed, obliterated, or altered, are unconstitutional, and must be vacated.

12. PETITIONER WAS DEPRIVED OF HIS SIX-AMENDMENT RIGHT TO EFFECTIVE   ASSISTANCE OF COUNSEL

**Three Questions here:**

1.  What clause of the Constitution of the United States clearly grants the government a constitutional power to arbitrarily abrogate for life, a Citizen's secured individual right expressed in one of the first eight Amendment?

2.  What clause of the Constitution of the United States expressly states that it automatically withdraws a citizen's constitutional rights expressed by the first eight amendments upon a conviction with a sentence that exceeds one year?

3.  What clause of the Constitution of the United States expressly discriminates among the People?

### III

### THE DISTRICT COURT ERRORED IN USING COLONIAL LAW IN DENYING PETITIONER'S 2255 MOTION

The District Court in denying Petitioner's 2255 motion, cited,  and used,   colonial laws in effect prior to the Declaration of Independence, and to the first ten Amendment to the Constitution of the United States.  The laws of a colony. The term is used to designate the body of law in force in the colonies of America prior to the adoption of the first ten Amendments and the Constitution of the United States. Since that time, the United States Constitution has served as the supreme law of the United States since taking effect in 1789. Those Colonial laws, such as regulations on possession of firearms within a settlement or town, had no effect on people outside those limits: and did not abrogate for life, a person's secured right to self-defense, and to the possession of a firearm. And, those colonial laws were not the laws of the United States made under the Second and Fifth Amendments to the United States Constitution. Thus, it was error for the District Court to rely on those colonial laws to deny Petitioner's 2255 motion.

### IV

**It is a falsehood that when a state or federal government convicts a person of some minor government offense with a sentence exceeding one year, that a citizen's secured individual right to keep and bear Arms, automatically evaporates into thin air.**

The Federal Government forces upon the People, the falsehoods that when a state or federal government convicts a person of some minor government offense, with a sentence exceeding one year, that citizen's secured individual right to keep and bear Arms, automatically evaporates into thin air. Thus, when that person exercises his or her constitutional secured individual right to possess a legal firearm for lawful self-defense, the Government has constitutional power to imprison that citizen for up to life. Further, The Federal Government forces upon the People, the falsehoods that United States Constitution and its first eight Amendments covers-protects only "law-abiding citizens." These Government's falsehoods are contrary to the United States Constitution and its first eight Amendments. However, Under the Government's falsehoods, the Government has imprisoned Petitioner for exercising his individual right to possess a firearm for self-defense. Such federal imprisonment is **unlawful** because Petitioner's secured individual right to possess a firearm, and his right to self-defense, **has never been constitutionally abrogated.**

**V**

**Under the Constitution of the United States and under the authorities cited herein, Petitioner's secured individual right to possess a firearm, has never been constitutionally abrogated.**

Under the Fourteenth Amendment to the Constitution of the United States, Petitioner is an American Citizen. As such, he is guaranteed a long list of protected unalienable and Natural, and Fundamental, and Substantive, and Constitutional secured rights, including the individual rights to possess legal firearms, and to lawful self-defense. Those secured rights are unambiguously expressed by, and clearly protected by, the first Ten and Fourteenth Amendments to the Constitution of the United States. See first Ten and Fourteenth Amendments. Those first eight Amendments set forth self-

executing prohibitions on government actions. <u>See</u> <u>City of Boren v. Flores</u>, 521 U.S. 507, 524 (1997); <u>Dred Scott v. Sandford</u>, 60 U.S. 393, 417-420,  450-451(1856); <u>United States v. Cruikshank</u>, 92 U.S. 542, 553 (1875.); <u>Logan v. United States.</u> 144 U.S. 263, 287 (1892).

The right to keep and bear Arms is completely encompassed within, and is fully protected by the Due Process Clauses of the Constitution of the United States. <u>See</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 306-307 (1994); <u>Planned Parenthood v. Casey</u>, 505 U.S. 833, 847-848 (1992);  <u>Moore v. East Cleveland</u>, 431 U.S. 494, 502 (1977); <u>Poe v. Ullman</u>, 367 U.S. 497, 541-543 (1961).  And, "where rights secured by the Constitution are involved, there can be no 'rule making' or legislation which would abrogate them." <u>Miranda v. Arizona</u>, 348 426, 491 (1966).

The Second Amendment to the United States Constitution is the Law of the Land. <u>See</u> <u>Article VI, Constitution of the United States</u>. It defines, and protects,  the  Natural, and the Fundamental, and the Substantive, and the Constitutional secured rights of the People, to possess  firearms,  and  to self-defense, and for other lawful purposes.  Additionally, the Second Amendment defines, and  regulates, and  provide limitations, and prohibitions,  on the Government's power to arbitrarily disarm "members of the people." Without the provisions of the Second Amendment, there would be no limitations, or prohibitions  on the Government's power to arbitrarily disarm "members of the people," at the whim of the Government. The central purpose of the Second and Fifth Amendments is to provide limitations  and prohibitions,  on the Government's power to arbitrarily disarm "members of the people."  Due process balances the power of the Law of the Land, and protects the individual person from arbitrary  actions by the Government.  When a government harms a person without following the exact course of the law, this constitutes a due process violation, which offends the rule of law.  <u>See</u> <u>Second</u> and <u>Fifth Amendments and Article VI of the Constitution of the United States.</u>

VI

Petitioner's secured individual right to possess legal firearms, and his protected right to self-defense, has never been abrogated withing the secured protection of the Constitution of the United States.

## THE GOVERNMENT BEARS THE BURDEN OF PROVING BEYOND A REASONBLE DOUBT THAT PETITIONER'S SECURED INDIVIDUAL RIGHT TO KEEP AND BEAR LEGAL ARMS, AND TO DELF-DEFENSE, HAS BEEN CONSTITUTIONALLY ABROGATED FOR LIFE

The Government bears the burden of demonstrating that an individual citizen has voluntarily, intelligently and knowingly relinquished his Second and Fifth Amendment secured rights by a preponderance of the evidence. See State v. Doe, 131 Idaho 709, 712, 963 P.2d 392, 395 (Ct. App. 1998) (citing State v. Alger, 115 Idaho 42, 46, 764 P.2d 119, 123 (Ct. App. 1988)). Waivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. a valid waiver is the "intentional relinquishment or abandonment of a known right or privilege. Brady v. United States, 397 U.S. 742, 748 (1970); see, e.g., Maryland v. Shatzer, 559 U.S. 98, 104 (2010); Edwards v. Arizona, 451 U.S. 477, 483 (1981) (quoting Arizona v. Edwards, 594 P.2d 72, 78 (Ariz. 1979)); see also Edward L. Rubin, Toward a General Theory of Waiver, 28 UCLA L. REV. 478, 491–93 (1981). It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393; Hodges v. Easton, 106 U.S. 408, 412; Slocum v. New York Life Ins. Co., 228 U.S. 364, 385; Patton v. United States, 281 U.S. 276, 312; Dimick v. Schiedt, 293 U.S. 474, 486; Foust v. Munson S.S. Line, 299 U.S. 77, 84.

At the time the Government prosecuted Petitioner for exercising his Constitutional right to keep and bear arms, that secured individual right **had not** been constitutionally abrogated. To prove differently, all the Government need do, is:

1.  Provide the Court with a judicial record establishing that Petitioner's "individual right" to keep and bear arms, had been constitutionally abrogated prior to the government's prosecution; and

2.  Provided the Court with a copy of the clause of the Constitution of the United States that clearly grants the federal government a power to arbitrarily abrogate a Citizen's individual rights secured and expressed by the first eight Amendments; and

3.  Provide the Court with a copy of the clause of the Constitution of the United States that declares that a Citizen's "individual right" declared in the first eight Amendments to the Constitution of the United States, automatically evaporates upon a felony conviction; and

4.  Provide the Court with a copy of the clause of the Constitution of the United States that declares that the Constitution and its first eight Amendments applies only to, and protects only, "law-abiding responsible citizens;

**Therefore**, those convictions and sentences must be vacated.

## VII

The District Court failed to specifically, and to individually address **whether** The Due Process Clauses of the Fifth and Fourteenth Amendments includes, and protects, **both** Petitioner ("individual citizens,"), and his "individual right," to keep and bear legal arms, as expressed by the Supreme Courts in Albright v. Oliver, 510 U.S. 266, 306-307 (1994); Planned Parenthood v. Casey, 505 U.S. 833, 847-848 (1992); Moore v. East Cleveland, 431 U.S. 494, 502 (1977); Poe v. Ullman, 367 U.S. 497, 541-543 (1961).

## VIII

## THE GOVERNMENT CREATED AND IS USING THE WORDS "LAW-ABIDING RESPONSIBLE CITIZENS" TO DETERM WHO AMONG THE PEOPLE MAY POSSESS LEGAL FIREARMS FOR SELF-DEFENSE, CONTRARY TO THE CONSTITUTION OF THE UNITED STATES

### a

The District Court in denying Petitioner's 2255 constitutional claims, mentioned "law-abiding, responsible citizens," **insinuating** that the Constitution of the United States and its first ten Amendments, protected **only** that class of citizens, in which Petitioner was excluded from. Of course, as usual, that

judge **did not** cite any Constitutional authority for such an erroneous and unsupported statement made in the face of binding precedent contrary to that statement.

Petitioner argues that "law-abiding citizens" should not be read "as rejecting Heller's interpretation of 'the people.'" The references to "law-abiding, responsible citizens" in <u>Heller</u> **were dicta,** and is as expansive **as it is vague**.

In Heller, a Justice of the Supreme Court cautioned that "nothing in the Court's opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," *Id.* It is important to clarify that the judge's mention of felons, is dictum. The Justice's statement was purely dictum; and is not precedential, and is not binding law because it was contrary to the Second and Fifth and Fourteenth Amendments. "A statement is dictum when it is made during the course of delivering a judicial opinion, but . . . is unnecessary to the decision in the case and is therefore not precedential." <u>Cetacean Cmty. v. Bush</u>, 386 F.3d 1169, 1173 (9th Cir. 2004) (alteration in *Cetacean Cmty.*) (Brackets, citation, and internal quotation marks omitted). The phrase "law-abiding, responsible citizens" is as expansive **as it is vague**. The Supreme Court noted recently: "a felon is not always more dangerous than a misdemeanant." <u>Lange v. California</u>, 141 S. Ct. 2011, 2020 (2021) (cleaned up). As for the modifier "responsible," it serves only to undermine the protections of the Constitution of the United States, because it renders the category hopelessly **vague**. In our Republic of over 330 million people, Americans have widely divergent ideas about what is required for one to be considered a "responsible" citizen.

The void for vagueness doctrine derives from the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. That is, vague laws unconstitutionally deprive people of their rights without due process. See Connally v. General Construction Co., 269 U.S. 385, 391 (1926).

At root, the Government's claim that only "law-abiding, responsible citizens" are protected by the Second Amendment devolves authority to legislators to decide whom to exclude from "the people." Such "extreme deference gives legislatures unreviewable power to manipulate the Second Amendment by choosing a label." Folajtar, 980 F.3d at 912 (Bibas, J., dissenting). And that deference would contravene Heller's reasoning that "the enshrinement of constitutional rights necessarily takes certain policy choices off the table." 554 U.S. at 636; See also Bruen.

**No-where** in the body or in the language of Constitution of the United States and its first ten Amendments, does it mention "law-abiding, responsible citizens." **No-where** in the language of Constitution of the United States and its first ten Amendments, does it declare that the protections of the Constitution and its first ten Amendments, **protects only** "law-abiding, responsible citizens." There is not a discrimination clause in the Constitution of the United States.

QUESTIONS: What is the legal definition for a "law-abiding, responsible citizens?" To Petitioner's research, no court has ever **defined** "law-abiding, responsible citizens," as being separated from the body of the People.

The Supreme Court on several occasions made clear that the Due Process Clauses of the Fifth and Fourteenth Amendments includes, and protects, **both** "individual citizens," and her/his "individual right," to keep and bear legal arms. See Albright v. Oliver, 510 U.S. 266, 306-307 (1994); Planned Parenthood v. Casey, 505 U.S. 833, 847-848 (1992); Moore v. East Cleveland, 431 U.S. 494, 502 (1977); Poe v. Ullman,

11

367 U.S. 497, 541-543 (1961). Further, the Supreme Court has made clear that "All Constitutional guarantees extend both to the rich and poor alike, to those with notorious reputation, as well as to those who are models of upright citizenship. No regime under the rule of law could comport with constitutional standards that drew such distinctions." Smith v. United States, 428 U.S. 1303, 1308 (1975), Ex parte Milligan, 71 U.S. 2, 121 (1866). The rights enumerated in the first eight Amendments belong to every Citizen as a member of society. Poe, 367 U.S. at 540-543; Logan, 144 U.S. at 286-288; United States v. Cruikshank, 92 U.S. 542, 551-554 (1875). The Constitutional rights of criminal defendants are granted to the innocent and the guilty alike. Kimmelman v. Morrison, 477 U.S. 365, 380 (1986). And, the Constitution of the United States, is a law for rulers and people, equally in war and in peace, and covers with the shield of its protections **all classes of men, at all times, and under all circumstances.** No doctrine, involving more pernicious consequence's, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Ex parte Milligan, 71 U.S. 2, 121 (1866). See also Florida v. Bostick, 115 L.ed. 2d 389, 401 (1991); Marbury v. Madison, 5, U.S. 137, 176-180 (1803). "The first eight Amendments to the Constitution set forth self-executing prohibitions on governmental action". City of Borene v. Flores, 521 U.S. 507, 524 (1997). Therefore, under both the Constitution of the United States, and Supreme Court binding precedent, both Petitioner, and his secured right, to possess a legal firearm are included in, and protected by the Constitution's Due Process Clauses. Thus, even if the government does conjure up some reason to abrogate a Citizen's secured rights, Petitioner is Constitutionally entitled to a full, in the courtroom, due process hearing, **before** the government my constitutionally take away his secured "right" to keep and bear arms.

IX

In denying Petitioner's 2255 petition, the District Court said: "Congress permissibly disqualified Petitioner from keeping and bearing arms as a consequence of his felony convictions." Here, the District Court **shows disrespect** for the controlling authority of the Constitution of the United States and its first

12

ten secured Amendments. "The first eight Amendments to the Constitution set forth self-executing prohibitions on governmental action." City of Borene v. Flores, 521 U.S. 507, 524 (1997). **No-where** in the language of the Constitution of the United States and its first ten Amendments, does it give Congress **any power** to **arbitrarily** abrogate for life, or otherwise, deprive any American Citizen, here Petitioner, of a secured right declared in one of the first ten Amendments. The founding generation "were for **every man** bearing his arms about him and keeping them in his house, his castle, for his own defense." **Cong. Globe, 39th Cong., 1st Sess., 362, 371 (1866) (Sen. Davis).**

Under the Constitution of the United States, and under Supreme Court binding precedent, American Citizens (Petitioner) do not forfeit constitutional secured rights by **reason** of a felony conviction; Even while actually imprisoned, they do not forfeit all constitutional rights, only those rights necessary to maintain institution security and discipline. See Bell v. Wolfish, 441 U.S. 520, 545-546 (1979); Wolff v. McDonnell, 418 U.S. 539, 555-556 (1974). There is no iron curtain drawn between the Constitution and the people of this Country. See Wolff at 555-556; Bell, 441 U.S. at 545. The Supreme Court has made clear that "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them." Miranda v. Arizona, 384 U.S. 436, 491 (1966). Duncan v. Louisiana, 391 U.S. 145, 148-154 & n. 21 (1968); Davis v. Passman, 442 U.S. 228, 241-244, 246(1979); Florida v. Bostick, 115 L.Ed. 2d. 389, 401 (1991); City of Boerne v. Flores, 521 U.S. 507, 524, 529 (1997). See also Marbury v. Madison, 5, U.S. 137, 176-180 (1803); Scott, 60 U.S. at, 450. United States Supreme Court **Chief Justice Taney,** made clear that the government (Congress) cannot deny to the people the right to keep and bear Arms; and cannot abrogate any right expressed in the first eight Amendments to the Constitution of the United States. See Scott v. Sandford, 60 U.S. 393, 450 (1867); Marbury v. Madison, 5, U.S. 137, 176-180 (1803); Parker v. District of Columbia, 478 F.3d 370, 391 (D.C. Cir. 2007). See also City of Borene v. Flores, 521 U.S. 507, 524 (1997) ("The first eight Amendments to the Constitution set forth self-executing prohibitions on governmental action").

X

**The right to keep and bear legal arms secured by the Second and Fifth Amendments, does not evaporate upon a felony conviction**

The Second Amendment declares in part: "The right of the people to keep and bear Arms, shall not be infringed." See Second Amendment (1791). The Second Amendment protects "the right to keep and bear Arms." United States v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990). The Constitution of the United States includes-encompasses, and protects all Citizens, **including felons**. See Smith v. United States, 428 U.S. 1303, 1308 (1975) and Ex parte Milligan, 71 U.S. 2, 121 (1866).

The Supreme Court on several occasions made clear that the Due Process Clauses of the Fifth and Fourteenth Amendments includes, and protects, **both** "individual citizens," and her/his "individual right," to keep and bear legal arms. See Albright v. Oliver, 510 U.S. 266, 306-307 (1994); Planned Parenthood v. Casey, 505 U.S. 833, 847-848 (1992); Moore v. East Cleveland, 431 U.S. 494, 502 (1977); Poe v. Ullman, 367 U.S. 497, 541-543 (1961). Further, the Supreme Court has made clear that "All Constitutional guarantees extend both to the rich and poor alike, to those with notorious reputation, as well as to those who are models of upright citizenship. No regime under the rule of law could comport with constitutional standards that drew such distinctions." Smith v. United States, 428 U.S. 1303, 1308 (1975), Ex parte Milligan, 71 U.S. 2, 121 (1866). The rights enumerated in the first eight Amendments belong to **every Citizen** as a member of society. Poe, 367 U.S. at 540-543; Logan, 144 U.S. at 286-288; United States v. Cruikshank, 92 U.S. 542, 551-554 (1875). The Constitutional rights of criminal defendants are granted to the innocent and the guilty alike. Kimmelman v. Morrison, 477 U.S. 365, 380 (1986). And, the Constitution of the United States, is a law for rulers and people, equally in war and in peace, and covers with the shield of its protections **all classes of men, at all times, and under all circumstances**. No doctrine, involving more pernicious consequence's, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Ex parte Milligan, 71 U.S. 2, 121 (1866). See

also Florida v. Bostick, 115 L.ed. 2d 389, 401 (1991); Marbury v. Madison, 5, U.S. 137, 176-180 (1803). "The first eight Amendments to the Constitution set forth self-executing prohibitions on governmental action". City of Borene v. Flores, 521 U.S. 507, 524 (1997). Therefore, under the Constitution of the United States, and  Supreme Court binding precedent, both Petitioner, and his secured right,  to possess a legal firearm are included in, and protected by the Constitution's Due Process Clauses. See Albright v. Oliver, 510 U.S. 266, 306-307 (1994); Planned Parenthood v. Casey, 505 U.S. 833, 847-848 (1992); Moore v. East Cleveland, 431 U.S. 494, 502 (1977); Poe v. Ullman, 367 U.S. 497, 541-543 (1961). Thus, even if the government does  conjure up some reason to abrogate a Citizen's  secured rights, Petitioner is Constitutionally entitled to a full, in the courtroom, due process hearing, **before** the government my constitutionally take away his secured "right" to keep and bear arms.

XI

**THE DISTRICT COURT IN DENYING PETITIONER'S 2255 MOTION FAILED IN ITS DUTY TO OBEY THE LAW WHICH ESTABLISHED THAT THE GOVERNMENT'S PROSECUTION OF PETITIONER FOR POSSESSION OF FIREARMS, CLASHES WITH THE PROHIBITIONS AGAINST THE GOVERNMENT EXPRESSED BY THE SECOND AND FIFTH AMENDMENTS**

Petitioner's secured "individual right," to keep and bear arms, **had not been** Constitutionally abrogated on August 13, 2019, and on August 27, 2019, and on May 13, 2021. To prove differently, all the government's attorney need do, is:

1.  Provide the Court with a judicial record establishing that Petitioner's "individual right" to keep and bear arms, had been constitutionally abrogated prior to the government's prosecution; and

2.  Provided the Court with a copy of the clause of the Constitution of the United States that clearly grants the federal government a power to arbitrarily abrogate a Citizen's rights secured by the first eight Amendments; and

3.  Provide the Court with a copy of the clause of the Constitution of the United States that declares that a Citizen's "individual right" declared in the first eight Amendments to the Constitution of the United States, automatically evaporates upon a felony conviction; and

4.  Provide the Court with a copy of the clause of the Constitution of the United States that declares that declares that the Constitution and its first eight Amendments applies only to, and protects only, "law-abiding responsible citizens.

The  Government's prosecution of Petitioner for possession of a firearm, clashed with Petitioner's secured Second and Fifth Amendment rights protected by the Constitution of the United States.

Under the Second Amendment, and the Due Process Clauses of the Fifth and Fourteenth Amendments,  prosecuting Petitioner for possession of a firearm, when his constitutional secured "individual right," to keep and bear arms, **had not** been constitutionally abrogated, violated the Second and Fifth Amendments to the Constitution of the United States.   Thus, under the Constitution of the United States, the government's convictions and sentences of the 13 counts of violating 18 U.S.C. § 922(g)(1) (possession of a firearm by a felon), must be vacated.

**XII**

**PETITIONER WAS DEPRIVED OF HIS SIX-AMENDMENT RIGHT TO EFFECTIVE   ASSISTANCE OF COUNSEL**

**FACTS**

Petitioner's trial attorney failed to challenge the incorrect jury instructions; and failed to introduce a special verdict form because of the multiplicities  that confused the jury making it appear to be more criminal activity than it actually was. Further the attorney informed, and advised Petitioner that all the sentences he would receive would run currently. Petitioner  relied on that advice to his prejudice. The petitioner believed that his sentences  would run concurrently if he went to trial, when, in fact, the trial resulted in the sentences to run consecutively.

Had Petitioner known that the sentences could run consecutively, he would have entered an open plea to the indictment to obtain the  three-points sentence reduction for acceptance of responsibility, and a much lower sentence.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The right to be represented by counsel is by far the most important of a defendant's constitutional rights because it affects the ability of a defendant to assert a myriad of other rights. As Justice Sutherland explained in Powell v. Alabama, 287 U.S. 45, 68-69 (1932):

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with a crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he has a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much truer is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense. Id., at 68-69, 53 S.Ct., at 63-64.

The right to the assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution. This right to the assistance of counsel has long been understood to include a "right to the effective assistance of counsel." See McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970). The integrity of our criminal justice system and the fairness of the adversary criminal process is assured only if an accused is represented by an effective attorney. See United States v. Morrison, 449 U.S. 361, 364 (1981). Absent the effective assistance of counsel, "a serious risk of injustice infects the trial itself." Cuyler v. Sullivan, 446 U.S. 335, 343 (1980). Thus, a defendant is constitutionally entitled to have effective counsel acting in the role of an advocate. See Anders v. California, 386 U.S. 738, 743 (1967).

One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether he should plead guilty or go to trial. <u>Reed v. United States,</u> 354 F.2d 227, **229 (5th Cir.1965).** An attorney fulfills this obligation by informing the defendant about the relevant circumstances and the likely consequences of a plea. <u>Teague v. Scott,</u> 60 F.3d 1167, **1170 (5th Cir. 1995).** Apprising a defendant about his exposure under the sentencing guidelines is necessarily part of this process. A defendant cannot make an intelligent choice about whether to accept a plea offer unless he fully understands the risks of proceeding to trial. *Id.* at 1171. "Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland.*" <u>United States v. Herrera</u>, 412 F.3d 577, 580 (5th Cir. 2005).

The <u>Grammas</u> court adopted the "any amount of jail time" test in <u>United States v. Grammas.</u> , 376 F.3d 433, **439 (5th Cir.2004)** (adopting the "any amount of jail time" test). This test originated from the Supreme Court's decision in <u>Glover v. United States</u> where the Court explained that any amount of additional jail time has significance under *Strickland.* <u>Glover v. United States,</u> 531 U.S. 198, **203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001).**

The <u>Grammas</u> court determined that the "any amount of jail time" test applies where the defendant was convicted after the Supreme Court's decision in *Glover.* <u>Grammas,</u> 376 F.3d at 438. The <u>Grammas</u> court further held that grossly underestimating a defendant's exposure under the sentencing guidelines constitutes ineffective assistance of counsel. *Id.* at 436-37.

Under the Six Amendment to the U.S. Constitution, criminal defendants have a number of guaranteed rights, including the "Assistance of Counsel." Although it's not spelled out in the amendment, the U.S. Supreme Court has long recognized that legal representation must be effective if it's to serve the purpose of ensuring a fair trial. The right to effective legal representation applies not only to the actual criminal trial but also to other stages of the criminal process, including plea bargaining and post-conviction proceedings to decide whether to impose a death sentence. And it doesn't matter if the defendant hired a private defense attorney or have a court appointed counsel—all criminal defense attorneys must provide effective representation. See Strickland v. Washington, 466 U.S. 668 (1984) Under Strickland v. Washington, 466 U.S. 668 (1984) The appropriate standard for ineffective assistance of counsel requires both that the defense attorney was objectively deficient and that there was a reasonable probability that a competent attorney would have led to a different outcome. In a case where the defense counsel's ineffective assistance resulted in an unfair trial, the court may grant a new trial. Harris v. U.S., 701 F.Supp.2d 1084 (S.D. Iowa 2010).

In this case, Petitioner's trial attorney failed to challenge the incorrect jury instructions which resulted in several convictions for the same offense;  and the attorney failed to challenge the incorrect information alleged in the PSI, such as the four-level enhancement, and criminal history points; and the attorney failed to introduce a special verdict form because of the multiplicities  that confused the jury making it appear to be more criminal activity than it actually was. Further the attorney informed, and advised Petitioner that all sentences he would receive would run currently if he went to trial. Petitioner's attorney misadvised him about his sentencing exposure. In reaching Petitioner's decision to go to trial, he  relied on his trial attorney's  advice  that he would receive current sentences. Yet, he received

consecutive sentence after trial. **Petitioner asserts that he would not have gone to trial if he had known that he faced consecutive sentences because of trial, a "significantly** larger sentence. the attorney informed, and advised Petitioner that all the sentences he would receive would run currently if he went to trial. **Had Petitioner known** that the sentences could run consecutively, he would have entered an open plea to the indictment to obtain the  three points for acceptance of responsibility, and he would have received a much lower sentence by several years.

### This Court should grant this petition

This Court should grant this petition and adjudge each of Petitioner's individual claim; and  to resolve the government's illegal bypass of the prohibitions of Article 6, Clauses 2 and 3; and, its  illegal bypass of the prohibitions of the Second Amendment, and its  illegal bypass of the prohibitions of the Due Process Clauses of the Constitution of the United States; and to clarify  Petitioner's Constitutional secured "individual rights" protected and secured to him by both the <u>Second Amendment</u>, and by the <u>Due Process Clauses</u>, namely the "individual right" to keep and bear legal arms for lawful home and family and self-defenses. Thus, preventing the Government from arbitrarily depriving Petitioner of Constitutional secured rights, and forbidding him to, exercise his  Second Amendment secured "individual right," to possess a legal handgun for home and family and self-defenses.  Therefore, forbidding the Government from arbitrarily prohibiting Petitioner from exercising his secured Constitutional "right," to possess a legal firearm for lawful home and family and self-defenses, without first providing him with due process of law.

Pursuant to 28, U.S.C. § 1746, "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the above and foregoing is true and correct.

<u>Executed</u> on February 15, 2024

Respectfully submitted,

Kenneth Chung

Kenneth Eugene Cherry, Jr
Pro se Petitioner
#69878-066
FCI Loretto
P.O. Box 1000
Cresson, PA 16630

### AFFIDAVIT OF KENNETH EUGENE CHERRY, JR  PETITIONER HEREIN

Petitioner declares and states that his Constitutional secured "individual right, to keep and bear arms," has never been Constitutionally abrogated by, or in, any judicial court hearing. No judicial court has ever heard Petitioner's above constitutional claims on the merits, with a written opinion issued on each of his claims.

Pursuant to 28, U.S.C. § 1746, "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the above and foregoing is true and correct.

<u>Executed</u> on February 15, 2024

Kenneth Eugene Cherry, Jr
Pro se Petitioner
#69878-066
FCI Loretto
P.O. Box 1000
Cresson, PA 16630

### CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing to be served by first class mail, postage prepaid, upon the following:

Mark S. Miller
Assistant U.S. Attorney
U.S. Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

Kenneth Eugene Cherry, Jr

Kenneth Chleay . 69878-066
PO Box 1000
Cresson, PA 16630

Clerks Office
U.S. Court of Appeals 3d Circuit
601 Market St. Ste 18614
Philadelphia, PA 19106

RECEIVED
MAR -1 2024
U.S.C.A. 3rd. CIR

U.S.M.S.
X-RAY

